# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3329

_____

Jeffrey C. Rahn,       *
      *
      Appellant,       *
      *
      *       Appeal from the United States
      v.       *       District Court for the
      *       Eastern District of Missouri.
Vickie Hawkins; Craig Jansen;       *
Gerald Fitzgerald,       *
      *
      Appellees.       *

_____

Submitted: June 12, 2006
Filed: September 22, 2006

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[1] District Judge.

_____

ARNOLD, Circuit Judge.

Hazelwood, Missouri, police officers shot and maced Jeffrey Rahn several times while trying to arrest him for a bank robbery. Mr. Rahn sued the officers under 42 U.S.C. § 1983, claiming that their use of force violated the fourth amendment because he was peacefully surrendering when shot. The district court determined that Officers Vickie Hawkins, Craig Jansen, and Gerald Fitzgerald were entitled to qualified immunity on the excessive-force claim and granted their motion for

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

summary judgment. We reversed, holding that if Mr. Rahn was indeed surrendering without a struggle when shot and maced, the officers were not entitled to qualified immunity. *See Rahn v. Hawkins*, No. 02-3496, 2003 WL 22014730 (8th Cir. Aug. 26, 2003) (unpublished per curiam). The suit proceeded to trial, and a jury found in favor of the defendants. Mr. Rahn appeals, arguing that various errors require a new trial. We affirm the judgment entered for Mr. Fitzgerald but reverse the judgment with respect to the other two defendants.

I.

When submitting proposed jury instructions to the district court, Mr. Rahn asked for a deadly-force instruction that read, "While the use of 'force' is reasonable under the Fourth Amendment if it would seem justified to a reasonable police officer in light of the surrounding circumstances, the use of 'deadly force' is only justified if the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." The district court refused the proposed instruction, citing its general trepidation about giving instructions that vary from the Eighth Circuit model instructions and its fear that the jury would be confused if it gave both Mr. Rahn's deadly-force instruction and the so-called verdict-director instruction that it did give. The instruction that it gave was derived from Eighth Circuit Model Jury Instruction (Civil) 4.10. The relevant portion of that instruction states, "In determining whether such force was 'not reasonably necessary,' you must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances."

Mr. Rahn argues on appeal that the district court erred in not giving his proposed instruction to the jury. There is no dispute that Officers Hawkins and Jansen used deadly force in shooting Mr. Rahn; the only question at trial was if they acted reasonably in doing so. Mr. Rahn contends that because Model Instruction 4.10

does not advert specifically to the circumstances in which the police may constitutionally use deadly force, the district court should have given his instruction that draws on language in *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

In reviewing jury instructions, we look at "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 711 (8th Cir. 2001). We will reverse where the error affected the substantial rights of the parties. *Id*.

The use of deadly force to subdue a suspect is a seizure under the fourth amendment. *Garner*, 471 U.S. at 7. A police officer may constitutionally employ such force only when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 11; *see also Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001). This standard is more detailed and demanding than the one that governs excessive-force claims not including deadly force. *Compare Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

One purpose of jury instructions "is to inform the jury of various permissible ways of resolving the issues in the case, and a party is entitled to an instruction on its theory of the case so long as it is legally correct and there is factual evidence to support it." *Thornton v. First State Bank of Joplin*, 4 F.3d 650, 652 (8th Cir. 1993) (internal quotations omitted). The problem with giving only the more general excessive-force instruction is that it may mislead the jury as to what is permissible under the law. One can easily imagine a jury, having been given only the general standard, concluding that an officer was "objectively reasonable" in shooting a fleeing suspect who posed no threat to the officer or others. But such a result would be contrary to the law and would work an injustice to the injured plaintiff.

Jury instructions that discuss only excessive force in only a general way do not adequately inform a jury about when a police officer may use deadly force. *Monroe v. City of Phoenix*, 248 F.3d 851, 859-60 (9th Cir. 2001). When a plaintiff presents evidence at trial tending to show that a defendant used deadly force, the district court must instruct the jury as to that more exacting standard. *Cf. Thornton*, 4 F.3d at 652. Since Officers Hawkins and Jensen used deadly force against Mr. Rahn the district court should have given the jury a deadly-force instruction as to these two defendants. Its failure to do so amounts to error.

Mr. Rahn's proffered instruction is markedly different from Model Instruction 4.10, and its definition of when the police may use deadly force is much more circumscribed. The sole issue at trial was whether the defendants' use of force was justified. A correct statement of the law as to what circumstances justified deadly force was therefore critical to a correct disposition of the case. Because the jury was instructed improperly as to deadly force, and because we cannot conclude that the error was harmless, we must reverse the judgment entered on the jury verdict as to Officers Hawkins and Jensen and remand for a new trial. *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994).

II.

Mr. Rahn presented no evidence that Officer Fitzgerald used deadly force against him and so the district court did not err when it refused to give a deadly-force instruction with regards to Officer Fitzgerald. We therefore consider the other issues that Mr. Rahn raises on appeal.

A.

Before voir dire, the district court told each party that it had two peremptory challenges. Both parties agree that the district court clearly erred in doing so, since Federal Rule of Civil Procedure 47(b) and 28 U.S.C. § 1870 provide each party to a civil suit with three peremptory challenges.

The parties disagree, however, as to what we should do about the error. Mr. Rahn contends that because the district court denied him the use of a peremptory challenge, we should give him a new trial. In support, he cites language from *Swain v. Alabama*, 380 U.S. 202, 219 (1965), where the Supreme Court said that "[t]he denial or impairment of the right [to peremptory challenges] is reversible error without a showing of prejudice." Because the erroneous denial or impairment of the peremptory strike affects the very "constitution of the trial mechanism," *Arizona v. Fulminante,* 499 U.S. 279, 309 (1991), it amounts to a "structural error." Such errors defy harmless-error analysis because the entire trial process is infected and the appellate court is left with no way to tell what would have been the result had the error not occurred. When the party has registered a proper objection to a structural error, the court must reverse. *See id.* at 309-10.

The defendants, however, contend that such a remedy is unwarranted here. They first argue that Mr. Rahn cannot raise the issue on appeal because he did not make a contemporaneous objection to the trial court's action. They further contend that, even if we do consider the matter, a new trial is warranted only if Mr. Rahn can show actual prejudice, i.e., that the jury that heard the case was a biased one.

We conclude that the district court's error in effect denied Mr. Rahn his right to exercise a third peremptory strike and therefore amounts to structural error. When the district court told the parties that each could exercise two peremptory strikes, the unstated converse was that they could not exercise a third. Had Mr. Rahn objected to the district court's error, our inquiry would be at an end.

But Mr. Rahn did not object. The failure to object to any error, even a structural one, leaves the appellate court with the power to notice only plain error. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Plain error exists if the district court deviates from a legal rule; the error is clear under current law; and the error affects substantial rights, which ordinarily means that the error affects the

outcome of the proceedings. *United States v. Olano*, 507 U.S. 725, 732-35 (1993). We have the discretion to correct such an error when to abstain would " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Although *Olano* dealt with plain error in the context of a criminal proceeding, "an unpreserved error in the civil context must meet at least the *Olano* standard to warrant correction." *Wiser v. Wayne Farms*, 411 F.3d 923, 927 (8th Cir. 2005).

The parties agree that the district court erred and that the error was clear. Several of our sister circuits have held that "where a fault in the trial proceedings constitutes a structural error, the third prong of the *Olano* test is satisfied, and a specific showing of prejudice is not necessary." *United States v. Recio*, 371 F.3d 1093, 1101 (9th Cir. 2004); *see also United States v. Vazquez*, 271 F.3d 93, 100 (3d Cir. 2001), *cert. denied*, 536 U.S. 963 (2002); *United States v. David*, 83 F.3d 638, 646-47 (4th Cir. 1996). We find it unnecessary to decide this matter, however, because we conclude that the error here does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. The error disadvantaged both sides equally, and there is no evidence that the jury finally seated was anything less than completely fair. In addition, we do not wish to create incentives for parties to delay pointing out manifest errors to a district court. Were we to reverse, parties would have an incentive to "sandbag" a trial court, knowing that they could obtain a new trial if things did not go their way on the merits. We think that this type of strategic behavior, moreover, would expose the judicial process to scorn and ridicule. *See Neder v. United States*, 527 U.S. 1, 18 (1999) (citing Roger J. Traynor, *The Riddle of Harmless Error* 50 (1970)). We therefore deny relief for this assignment of error.

B.

Officer Hawkins testified at trial about what happened after she arrived at the bank. According to her testimony, she saw Mr. Rahn exit the back of the building

while the bank teller stood behind him and remained in the threshold. She then asked them both if everything was all right; when the teller said "No, just been robbed, he's got a gun," Officer Hawkins drew her service pistol.

Mr. Rahn's counsel then sought to question Officer Hawkins about a statement in a commemorative booklet that she received when she was awarded a commendation for her role in Mr. Rahn's arrest. Those statements included a description of what occurred at the bank that differed substantially from her testimony: While Officer Hawkins testified that Mr. Rahn never held the bank teller in front of him, the booklet said that he had "used the teller as a human shield to avoid getting shot at by the officers." The booklet also described Mr. Rahn as having held a gun to the teller's head, although Officer Hawkins testified that she never saw a gun in his hand. As Mr. Rahn's attorney began to ask the officer whether she was aware of certain statements in the booklet that explained why she was given the award, the defendants objected to the admission of the statements, arguing that they were hearsay. The district court sustained the objection.

A statement is hearsay only if the movant's goal in seeking to introduce the statement is to prove that the statement is true. Fed. R. Evid. 801(c); *see United States v. Looking Cloud*, 419 F.3d 781, 787-88 (8th Cir. 2005). Mr. Rahn's goal was not to prove that he had held a gun to a hostage's head or used her as a human shield, but to impeach Officer Hawkins's credibility. Since the purpose of discussing the statements in the booklet was not to prove the truth of the matter asserted there, the court erred in excluding it as hearsay.

We think, moreover, that this line of questioning was proper impeachment for two reasons. The first is to impeach the witness's general character for truthfulness: The Federal Rules of Evidence allow a party to question a witness about matters affecting his or her character for untruthfulness. *See* Fed. R. Evid. 611(b). In doing so, the party may ask the witness about specific instances of their own conduct if that

conduct is probative of their character for untruthfulness. Fed. R. Evid. 608(b); *United States v. Beal*, 430 F.3d 950, 956 (8th Cir. 2005). Mr. Rahn may have been asking Officer Hawkins about the commemorative booklet in an attempt to show that she has a propensity not to tell the truth. If she knew about the booklet's contents before accepting the award, but yet said nothing, the jury may infer that she has a tendency to dissemble. That said, there is no evidence that Officer Hawkins knew about the statements ahead of time or had a realistic opportunity to disclaim them. The probative weight of this line of questioning was therefore minimal, but Mr. Rahn should have been able to question her about it nonetheless.

The other possible purpose for this line of questioning was to demonstrate that by her silence Officer Hawkins had adopted the statements in the booklet. Mr. Rahn could then impeach her credibility by showing that those statements contradicted her trial testimony. It is a fundamental rule of evidence that a party may ask about a witness's prior inconsistent statements in an effort to impeach his or her credibility. *United States v. Hale*, 422 U.S. 171, 176 (1975).

The defendants argue that there is no suggestion that Officer Hawkins affirmatively stated her agreement with the booklet's version of events; she merely remained silent. But a statement is attributable to a person when he or she stands silent in the face of its utterance if the natural response would be to deny it if untrue, *cf. id.*; Fed. R. Evid. 801(d)(2)(B), and the common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact when they would have naturally done so. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). Nor is there any requirement that the statement be inculpatory or otherwise incriminating in nature; all that is required is that a reasonable person would have spoken up. If Officer Hawkins knew about the statements ahead of time and had an opportunity to deny them, we believe that some correction might well have been expected. Again though the record does not reveal that either of these facts are true. It may well be that Officer Hawkins was caught unawares, in which case the statements could hardly

be attributed to her. But these questions went unasked since the district court erroneously sustained the defendants' objection.

Although we hold that the district court should have allowed Mr. Rahn to cross-examine Officer Hawkins about the booklet's statements, we do not think that Mr. Rahn is entitled to relief. We will not disturb a judgment unless the error affects "the substantial rights of the parties." 28 U.S.C. § 2111; *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Since neither Officer Hawkins's behavior at the award ceremony, nor any discrepancy between the booklet's statements and her trial testimony, had any great value for impeachment purposes, we conclude that the error that the district court committed was harmless.

C.

During discovery, Mr. Rahn, without notifying the defendants, served a deposition by written questions on Cheryl King, the sole teller at the bank the morning of the robbery. Two weeks later, the defendants learned of the deposition and moved to quash it, arguing both that Mr. Rahn had failed to give them notice as required by Fed. R. Civ. P. 31(a)(3) and that the deposition's questions were improper. The district court quashed the deposition, and it required Mr. Rahn to seek leave from the court before deposing Ms. King in the future because he had already taken her deposition for his criminal proceeding, *cf.* Fed. R. Civ. P. 31(a)(2)(B). Over three years later, Mr. Rahn, through counsel, notified the defendants that he would be taking Ms. King's oral deposition five days before trial. The defendants again filed a motion to quash the deposition, arguing that they had not received reasonable notice and the deadline for discovery had passed, and the court granted the motion.

Mr. Rahn contends on appeal that the defendants did not have standing to challenge his attempts to depose Ms. King because she was a non-party witness. We disagree. First, we believe that the defendants had standing to contend that they had not received proper notice. Before a party may take a deposition by written questions,

he or she must serve those questions on every other party along with a notice that specifies not only who is to answer the questions, but before whom the deposition is to be taken. Fed. R. Civ. P. 31(a)(3). A party must also give reasonable notice to other parties before deposing a witness orally. Fed. R. Civ. P. 30(b)(1). Because the injury that flows from inadequate notice is one that accrues to the party-opponent, it is he or she who has standing to force compliance with the rules.

We also think that although the defendants may not have had standing to raise Ms. King's right to privacy in response to the written questions, they did have standing to make other objections, which were not personal to Ms. King, by challenging, for example, the argumentative nature of Mr. Rahn's questions. *See Skogen v. Dow Chemical Co.*, 375 F.2d 692, 704 (8th Cir. 1967). And because scheduling orders are intended, in part, to assist the parties in preparing their case, we conclude that the defendants had standing to challenge Ms. King's oral deposition on the ground that the court's deadline for discovery had passed.

Finally, although Mr. Rahn has not raised the issue, we do not detect an abuse of discretion in the district court's orders quashing the written deposition of Ms. King and refusing to permit her oral deposition to be taken five days before trial. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).

D.

Shortly after the case began, the district court entered a case management order that set out how long the parties had to amend their pleadings, join additional parties, and complete discovery. Mr. Rahn repeatedly asked the court to extend those deadlines, arguing that his prisoner status limited his ability to comply with the order. The district court said that it had taken Mr. Rahn's prisoner status into account when drafting the order and denied his requests.

-10-

Mr. Rahn argues on appeal that the district court erred in refusing his requests. A modification to a scheduling order is proper only when the movant has demonstrated good cause. Fed. R. Civ. P. 16(b). The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements. *Bradford*, 249 F.3d at 809. We believe it clear that Mr. Rahn did not act diligently to meet the order's deadlines. Rather than focusing on amending his complaint or completing discovery, he spent most of his time filing frivolous motions before the district court. Nor can Mr. Rahn's status as a prisoner constitute good cause, since the order properly took into account the limitations that prison life presents. For these reasons, the district court was well within its discretion in denying Mr. Rahn's motions to extend the time that he had to amend his pleadings, join additional parties, and conduct discovery. We also conclude that the district court did not abuse its discretion in denying Mr. Rahn's motions to compel. As the district court noted, the defendants complied with the case management order's disclosure requirements and provided Mr. Rahn with hundreds of pages of files at their own cost. Any difficulties in the discovery process had their genesis with Mr. Rahn, not the defendants.

## III.

We affirm the judgment of the district court as to Officer Fitzgerald. Because the district court improperly instructed the jury as to the permissible use of deadly force, we reverse the judgment as to Officer Hawkins and Jensen and remand the case for further proceedings not inconsistent with this opinion.

LOKEN, Chief Judge, would affirm the judgment of the district court in its entirety.

_____

-11-