# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2570

_____

William Wolfe,                          *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
      v.                                *   District Court for the Western
                                        *   District of Arkansas.
Fayetteville, Arkansas School District, *
                                        *
            Appellee.                   *

_____

Submitted:  June 14, 2011
Filed: August 9, 2011

_____

Before BYE and MELLOY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

BYE, Circuit Judge.

William Wolfe filed suit against the Fayetteville, Arkansas School District alleging he was a victim of sexual harassment in violation of Title IX, 20 U.S.C. § 1681.  After the district court[2] denied the school district's motion for summary judgment, the case proceeded to trial.  A twelve-member jury issued a verdict in favor of the school district.  Wolfe moved for a new trial, but the district court denied the

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

motion. Wolfe appeals alleging the district court erroneously instructed the jury and further erred in empaneling a twelve-member jury as opposed to a six-member jury. Finding no error, we affirm the district court.

I

William Wolfe was a student in the Fayetteville, Arkansas School District ("FSD") until tenth grade. Between his sixth-grade and tenth-grade years, from 2003 to 2008, Wolfe was ridiculed at the hands of his fellow students on numerous occasions. Beginning in sixth grade, Wolfe was harassed several times per week including pushing, shoving, name-calling, and being falsely labeled as homosexual. The name-calling included gender-based epithets such as "faggot," "queer bait," and "homo," among others. Over the years, the harassment escalated. In seventh grade, Wolfe was punched and had his head slammed into a window while riding the school bus. In ninth grade, his classmates created a Facebook page called "Every One [sic] That Hates Billy Wolfe." The picture for the Facebook group showed Wolfe's face photo-shopped onto a figure in a green fairy costume with the word "HOMOSEXUAL" written across it. Additionally, Wolfe's classmates graffitied highly offensive, homosexual accusations about Wolfe on bathroom walls and in classroom textbooks. During Wolfe's last year with FSD, his tenth grade year, Wolfe got in a fight with a classmate, and two days later the classmate jumped out of a car and punched Wolfe while he was walking home from school.

While it does not deny these incidents of harassment, FSD insisted the motive underscoring the misconduct was not sex-based. Wolfe's fellow students and teachers explained they did not perceive Wolfe as homosexual and they believed he conformed to typical male gender stereotypes. Wolfe's classmates explained their use of the homosexual name-calling was not intended to attack Wolfe's sexuality, but rather was an angered response to Wolfe's mistreatment of other students. Several classmates suggested they accosted Wolfe because he had previously bullied a friend of theirs

suffering from cerebral palsy. FSD also indicated most of the classmates who engaged in altercations with Wolfe lacked any prior disciplinary history other than their confrontations with Wolfe.

Although Wolfe reported each of these incidents and others to the school, they were never reported to the school district's Title IX Coordinator or the Equity Compliance Officer because the school felt the incidents fell into the category of bullying and not sexual harassment. FSD felt it took appropriate steps in response to each of Wolfe's claims despite not reporting the incidents to the Title IX Coordinator or Equity Compliance Officer because it explored and documented every reported incident, removed graffiti, and reviewed bullying policies with students and teachers. However, Wolfe was not satisfied with the school's responsiveness, and after the tenth-grade incident in which Wolfe was violently punched walking home from school, he filed suit against the classmates who accosted him. The suit, coupled with a video of the incident available on the internet, led to considerable media attention. Wolfe was interviewed by *The New York Times*, *The Today Show*, *20/20*, and *Dateline* in the spring of 2008. Following this media attention, Wolfe was assigned a coach to follow him during school, but he still felt unsafe and decided instead to pursue a GED from home.

Wolfe filed the present suit against FSD[3] following his departure from school in the spring of 2008. He alleged he was the victim of sex discrimination in the form of sexual harassment in violation of Title IX, 20 U.S.C. § 1681. Wolfe also raised various other federal and state law claims not relevant to this appeal. FSD moved for summary judgment, but the district court denied the motion. FSD then requested the

_____

[3]Byron Zeagler, Vice Principal of Woodland Junior High School during the 2005-2006 and 2006-2007 school years and then Vice Principal of Fayetteville High School during the 2007-2008 school year, was also named as a defendant, in his official and individual capacity, in the initial complaint. However, Wolfe dismissed the claims against Zeagler before trial and Zeagler is not a party to this appeal.

district court empanel a twelve-person jury because "the nature of the case and the attention it had received" created "a significant possibility that passion or prejudice could improperly influence a smaller jury." Although Wolfe opposed the request, the district court empaneled a twelve-person jury and the case proceeded to trial. At the conclusion of trial, Wolfe and FSD each offered jury instructions on the Title IX claim. The district court declined to adopt either parties' instruction and instead chose another set of instructions which it concluded more closely paralleled the language of Title IX. Thereafter, the jury returned a verdict in favor of FSD on all claims. Following the verdict, Wolfe brought a motion for a new trial alleging the district court improperly instructed the jury and also erred in empaneling a twelve-person jury. After the district court denied the motion for a new trial, Wolfe appealed on each of these issues.

II

Wolfe first raises a two-fold jury instruction challenge. He contends the district court improperly instructed the jury and thereby added an element not legally required in Title IX claims to his burden of proof, and the district court improperly denied Wolfe an instruction on his theory of the case. We begin with the former contention.

A

"[T]he purpose of giving instructions is to inform the jury of the essential issues before them and of the various permissible ways of resolving those issues." Fed. Enters., Inc. v. Greyhound Leasing & Fin. Corp., 786 F.2d 817, 820 (8th Cir. 1986). We recognize the district court has broad discretion in choosing the form and language of the jury instructions, and we review instructions for an abuse of discretion. Cook v. City of Bella Villa, 582 F.3d 840, 857 (8th Cir. 2009); Boesing v. Spiess, 540 F.3d 886, 890 (8th Cir. 2008). The focus of our review is "whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light

of the issues presented to the jury in a particular case." <u>Weitz Co. v. MH Wash.</u>, 631 F.3d 510, 533 (8th Cir. 2011); <u>see also</u> <u>Wheeling Pittsburgh Steel Corp. V. Beelman River Terminals, Inc.</u>, 254 F.3d 706, 711 (8th Cir. 2001) ("The standard for reviewing alleged errors in jury instructions is whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.") (internal quotation marks and citations omitted). It is therefore error for the district court to provide the jury with instructions misstating the law. <u>Ryther v. KARE 11</u>, 108 F.3d 832, 850 (8th Cir. 1997) (en banc).

A review of the applicable law is thus in order. Wolfe's claim is premised on a violation of Title IX, which states, "[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As a recipient of federal funds, FSD is subject to liability for violations of Title IX, but only for damages arising from its own misconduct. <u>Ostrander v. Duggan</u>, 341 F.3d 745, 750 (8th Cir. 2003). Consequently, the school district can only be liable for student-on-student harassment if it was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." <u>Shrum ex rel. Kelly v. Kluck</u>, 249 F.3d 773, 782 (8th Cir. 2001) (citing <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 290-91 (1998); <u>Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 642 (1999)). Per the language of Title IX, these "acts of discrimination" must be "on the basis of sex." Harassment can constitute discrimination if it is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school" and if the school district has "actual knowledge" of the harassment. <u>Davis</u>, 526 U.S. at 650.

In accordance with this law, the district court instructed the jury that for Wolfe to prevail, he must prove:

(1) He was harassed <u>on the basis of sex</u>;

　　　　(2) The harassment was so severe, pervasive, and objectively offensive that it effectively deprived him of access to educational benefits or opportunities provided by the Fayetteville School District;

　　　　(3) The Fayetteville School District had actual knowledge of the harassment; and

　　　　(4) The Fayetteville School District acted with "deliberate indifference" to the known acts of harassment.

Jury Instruction No. 9, Appellant's Add. at 9 (emphasis added). The instructions then defined "on the basis of sex" as "sex-based harassment," and explained,

> To constitute sex-based harassment under Title IX, the harasser must be motivated by Wolfe's gender or his failure to conform to stereotypical male characteristics. If you find that the harassers were so motivated, then you may conclude that the harassment was based on his gender. If you find that the harassers were not so motivated, then you may not conclude the harassment was based on his gender.

Jury Instruction No. 10, Appellant's Add. at 10 (emphasis added).

The district court's instructions parallel the language of Title IX, "on the basis of sex," and correctly state each of the elements of a Title IX deliberate indifference claim as developed by case law. Consequently, Wolfe's only alleged error in these instructions is the definition of "sex-based harassment." According to Wolfe, discrimination "on the basis of sex" does not necessarily require a harasser to "be motivated by Wolfe's gender or his failure to conform" with gender stereotypes because neither the language of Title IX nor case law on Title IX claims suggests motivation is a necessary element. Instead, Wolfe suggests it would be sufficient under Title IX to show the harassers used name-calling and spread rumors in an effort to debase his masculinity and thus contends the district court erred in instructing the jury it had to find gender or the failure to conform to gender stereotypes as the harasser's motivation to hold FSD liable.

We find Wolfe's position unpersuasive. Whether a plaintiff must prove sex-based motivation as part of a Title IX deliberate inference claim has not yet been squarely addressed by this court or any other federal appellate court. However, guided by the language of Title IX and persuasive authority, we hold proof of sex-based motivation is required for a Title IX deliberate indifference claim. Specifically, Title IX imposes liability on a school district for discrimination only if the discrimination is "on the basis of sex." We glean from this language of the statute a requirement of underlying intent, and therefore motivation, on the part of the actor to discriminate because of one's sex or gender. See Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 984 (8th Cir. 2009) ("To resolve these questions of statutory interpretation, we begin, as always, by looking to the relevant statutory text."); Kalich v. AT&T Mobility, LLC, 748 F. Supp. 2d 712, 718-19 (E.D. Mich. 2010) (citing Michigan law interpreting "on the basis of sex" to include requirement of proof of motivation in that "the plaintiff must show that but for his sex, he would not have been the object of harassment") (internal quotation marks and citation omitted).

Our reading of Title IX as requiring proof of the underlying motivation for the discrimination is consistent with the Supreme Court's analyses in Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), and Davis v. Monroe County Board of Education, 523 U.S. at 629. In Oncale, the Supreme Court addressed the issue of if and when same-sex harassment can be actionable under Title VII.[4] In

[4]Although Oncale is a Title VII case, many of the other circuits have found Title VII cases to provide guidance in evaluating Title IX claims, and we agree. See, e.g., Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) (suggesting Title VII standards may also apply to discrimination claims under Title IX); Oona R.-S.- v. McCaffrey, 143 F.3d 473, 476 (9th Cir. 1998) (concluding it comports with leading Supreme Court precedent to apply Title VII principles to Title IX claims because the Supreme Court has "likened the duties of a school district to remedy sexual harassment under Title IX, to the Title VII duties of

concluding sex-based harassment can occur between two people of the same gender, the Court provided some guidance as to what types of harassment may constitute actionable discrimination. 523 U.S. at 80. It explained Title VII does not "prohibit all verbal or physical harassment . . .; it is directed only at discriminat[ion] . . . because of . . . sex." Id. (internal quotation marks omitted). The Court was careful to emphasize it "ha[s] never held . . . harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations," and instead, a plaintiff must prove the conduct at issue "constituted discrimination because of sex" and was not just "merely tinged with offensive sexual connotations." Id. at 80-81 (internal alterations omitted); see also King v. Super Serv., Inc., 68 F. App'x 659, 664 (6th Cir. 2003) (holding a plaintiff might also prove "discrimination on the basis of sex" by showing the sex-specific and derogatory terms used make clear "the harasser was motivated by general hostility to the presence of men in the workplace") (citing Oncale, 523 U.S. at 80).

We recognize Oncale is a Title VII case and is premised on different language than a Title IX case. Specifically, Title VII requires a plaintiff to prove "discriminat[ion] . . . because of . . . sex," 42 U.S.C. § 2000e-2(a)(1), whereas Title IX requires proof of discrimination "on the basis of sex." But, these two phrases are treated interchangeably. See 42 U.S.C. § 2000e(k) (providing the same definition for both "because of sex" and "on the basis of sex"); Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (stating "Title VII . . . prohibits discrimination in employment on the basis of sex" even though the language of Title VII protects from discrimination because of sex) (emphasis added). Thus, the Supreme Court's interpretation of Title VII properly informs our examination of Title IX, and we are persuaded by Oncale's implication as to the Title VII language "discriminat[ion] . . .

_____

an employer.") (citing Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75 (1992)); Torres v. Pisano, 116 F.3d 625, 630 n.3 (2d Cir. 1997) ("We have held that Title VII principles apply in interpreting Title IX.").

because of . . . sex" requiring a plaintiff to prove a gender-based motive for alleged harassment is equally applicable to Title IX cases.

In fact, the Supreme Court alluded to this conclusion in the Title IX case <u>Davis v. Monroe County Board of Education</u>. It was in <u>Davis</u> the Supreme Court first addressed whether a school district could be liable for student-on-student harassment where the school did not actively engage in any discrimination. The Court concluded a school could be liable for such harassment under Title IX if the school was deliberately indifferent to known acts of harassment despite having the authority to take remedial measures. 526 U.S. at 642-44. In reaching this conclusion, the Court went on to define "actionable harassment" for which a school may be liable for damages under Title IX. In relevant part, the Court indicated that to be actionable, harassment taking place in the school environment must be "gender-oriented conduct" amounting to more than "simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender." <u>Id.</u> at 651-52 (cautioning courts to be mindful of the fact "schools are unlike the adult workplace," "children may regularly interact in a manner that would be unacceptable among adults," and "in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct" that does not rise to the level of discrimination). Even though the discussion surrounding this language is addressing the requisite severity of the harassment, we read it, in conjunction with <u>Oncale</u>, to imply acts of name-calling do not amount to sex-based harassment, even if the words used are gender-specific, unless the underlying motivation for the harassment is hostility toward the person's gender. <u>See</u> <u>Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.</u>, — F.3d —, 2011 WL 2698975, at *6 (5th Cir. July 13, 2011) (stating harassment is actionable under Title IX only if it is "based on sex, per the words of Title IX, and not merely tinged with offensive sexual connotations" and affirming summary judgment where record fails to suggest the harasser "was motivated by anything other than personal animus") (internal quotation marks and citation omitted); <u>see also</u> <u>Patterson v. Hudson Area Schs.</u>, 724 F. Supp. 2d 682, 691

(E.D. Mich. 2010) (instructing the jury to find "the offending student's actions [to be] motivated by [the plaintiff's] sex or gender" in order to hold the school district liable in a Title IX deliberate indifference claim).

Ultimately, based on our reading of <u>Oncale</u>, <u>Davis</u>, and Title IX, we are convinced to recover on his Title IX deliberate indifference claim, Wolfe had to prove the harassment complained of amounted to more than mere name-calling; he was legally required to show the harasser intended to discriminate against him "on the basis of sex," meaning the harassment was motivated by either Wolfe's gender or failure to conform with gender stereotypes. Thus, we conclude the district court did not err when it instructed the jury "the harasser must be motivated by Wolfe's gender or his failure to conform to stereotypical male characteristics." This instruction is consistent with the applicable law.

B

Moving now to the second part of Wolfe's jury instruction challenge, Wolfe contends the district court erred in declining to offer his proposed jury instruction encompassing his theory of the case. "'[A] party is entitled to an instruction on its theory of the case so long as it is legally correct and there is factual evidence to support it.'" <u>Rahn v. Hawkins</u>, 464 F.3d 813, 818 (8th Cir. 2006) (quoting <u>Thornton v. First State Bank of Joplin</u>, 4 F.3d 650, 652 (8th Cir. 1993)). According to Wolfe, he proposed an instruction on his theory of the case and under <u>Rahn</u>, the district court erred in rejecting it. Wolfe's instruction provided, "Harassment may be sex-based . . . when it includes spreading rumors or name-calling that falsely labeled [Wolfe] as a homosexual in an effort to debase his masculinity or when [Wolfe] did not meet his peers' stereotyped expectations of masculinity." Proposed Instruction, Appellant's Add. at 8. However, Wolfe misreads <u>Rahn</u> to reach the conclusion he is entitled to *his* proposed instruction. <u>Rahn</u> entitles a party to "*an* instruction on its theory of the case," not necessarily to the *party's* offered instruction. 464 F.3d at 818 (emphasis

added); see also Fed. Enters., Inc., 786 F.2d at 820 ("[W]e accord a district judge broad discretion in choosing the form and language of the jury instructions."). Moreover, Rahn only entitles a party to "*an* instruction on its theory of the case" if the theory is "legally correct." 464 F.3d at 818 (emphasis added); see also Smith v. Tenet Healthsys. SL, Inc., 436 F.3d 879, 886 (8th Cir. 2006) (holding the district court did not abuse its discretion in refusing to give plaintiff's instruction because it misstated the applicable law).

We do not find Wolfe's proposed instruction to be consistent with the law. The case theory presented in Wolfe's instruction suggests a valid claim of discrimination "on the basis of sex" exists where one student spreads harassing rumors about another student, or engages in name-calling which attacks the student's masculinity. However, Wolfe's position that mere name-calling and rumors with sexual connotations are sufficient to meet Title IX is contrary to both Supreme Court cases discussed above: Oncale, 523 U.S. at 80 (holding that plaintiff must show the "conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex'") (emphasis and alterations omitted), and Davis, 526 U.S. at 652 (concluding Title IX does not provide relief for "simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender").

Further, Wolfe has failed to point to any legal authority holding the mere use of sex-based language in rumors or name-calling *per se* establishes sex-based discrimination. Wolfe does cite Schmedding v. Tnemec Co., 187 F.3d 862, 865 (8th Cir. 1999), a Title VII case, contending it holds the use of rumors falsely labeling the plaintiff as a homosexual in an effort to debase his masculinity establishes sex-based discrimination. However, we do not join in Wolfe's interpretation of the case. The issue presented in Schmedding was whether including allegations of homosexual name-calling and the spreading of rumors about Schmedding's "perceived sexual preference" converted a claim of harassment based on sex—which would be

actionable—to a claim based on sexual orientation—which may not have been actionable. Id. We explained, "we do not think that, simply because some of the harassment alleged by Schmedding includes taunts of being homosexual or other epithets connoting homosexuality, the complaint is thereby transformed from one alleging harassment based on sex to one alleging harassment based on sexual orientation." Id. Ultimately, because Schmedding expressed willingness to remove the language suggesting the harassment was based on his "perceived sexual preference," thereby leaving only allegations the harassment was based on sex, we remanded the case to permit Schmedding to amend his complaint and proceed with the case. Id. The language on which Wolfe relies was not a holding of the court, but rather the court's paraphrasing of Schmedding's argument on appeal:

> Although Schmedding concedes that the use of the phrase 'perceived sexual preference' may have been confusing, he asserts that the phrase indicates or shows that the harassment included rumors that falsely labeled him as homosexual in an effort to debase his masculinity, not that he was harassed because he *is* homosexual or *perceived* as being homosexual.

Id. (emphasis added). Thus, contrary to Wolfe's argument, Schmedding does not establish any rule suggesting rumors or name-calling falsely labeling someone as a homosexual are *per se* indications of harassment on the basis of sex. At best, Schmedding holds such harassment does not convert an otherwise viable claim of sex-based harassment to one of sexual-orientation-based harassment.

Because the instruction provided by the district court accurately portrayed the law underlying Wolfe's Title IX claim and because Wolfe was not entitled to an instruction on his theory of the case since it does not comport with the law, we conclude the district court did not abuse its discretion.

## III

Turning to Wolfe's second issue on appeal, he argues the district court erred in empaneling twelve jurors rather than six because having a higher number of jurors increased his burden of persuasion in order to acquire a unanimous verdict. However, as Wolfe conceded at oral argument, it is within the district court's discretion to select "at least 6 and no more than 12 members" for a jury. Fed. R. Civ. P. 48(a); see also Krumwiede v. Mercer Cnty. Ambulance Serv., Inc., 116 F.3d 361, 363 (8th Cir. 1997) (holding the district court's decision to empanel a six-member jury is consistent with Rule 48); Montiel v. City of Los Angeles, 2 F.3d 335, 338 (9th Cir. 1993) (holding "[t]he rule clearly states that a district court may empanel between six and twelve jurors. Nothing in the Committee Notes to the rule or the case law interpreting the rule suggests that a court opting for a twelve-member jury violates the rule"). We consequently see no merit in Wolfe's argument and find no error in the district court's decision. Accordingly, we uphold the district court's decision to empanel a twelve-person jury.

## IV

For the foregoing reasons, we affirm.

_____