[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13542

_____

RANDALL GREER,
individually and as personal representative of the
Estate of Christopher Greer, deceased,

Plaintiff-Appellant,

CHRISTINE GREER,

Plaintiff,

*versus*

WAYNE IVEY,
in his official capacity as Sheriff of Brevard County,
TOWN OF INDIALANTIC,
Florida, a municipal corporation,
JAMES HAMAN,
Cpl., individually and as an employee of Wayne Ivey in his

official capacity as Sheriff of Brevard County,
DIOMEDIS CANELA,
Deputy, individually and as an employee of Wayne Ivey
in his official capacity as Sheriff of Brevard County,

                                    Defendants-Appellees,


BREVARD COUNTY, FLORIDA, et al.,

                                    Defendants.


————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:15-cv-00677-CEM-GJK

————————————————

Before JORDAN, NEWSOM, and ED CARNES, Circuit Judges.

PER CURIAM:

       Christopher Greer brandished a knife at his brother and
grabbed his sister-in-law's throat, and Greer's brother called the po-
lice. Sheriff's deputies responded to the call, and after Greer failed
to comply with their commands, two of those deputies shot and
killed him inside his home. Greer's brother, sister-in-law, and

estate filed a lawsuit containing a total of twenty-four claims against the sheriff, the town, and the two deputies who shot Greer.

The only remaining parties are the Greer Estate and the deputies. The only claims involved in this appeal are 42 U.S.C. § 1983 excessive force claims and state law wrongful death claims.

## I.

This is the second time this case has been before us. The first appeal in the case was from the district court's grant of summary judgment in favor of the defendants on all counts. We reversed that judgment in part. *Greer v. Ivey*, 767 Fed. App'x 706, 714 (11th Cir. 2019) (*Greer I*). We held that a question of fact precluded summary judgment on the Estate's § 1983 excessive force claims and its state law wrongful death claims based on assault and battery. *Id.* at 712–13. Both the federal and state claims hinged on the question of whether "it was reasonable for [the deputies] to use deadly force on [Greer]." *Id.* at 710.

On remand, those claims went to trial, and a jury answered that question. It found that neither deputy violated Greer's "right not to be subjected to excessive or unreasonable force during an arrest." The Estate contends that the jury reached that verdict only because the district court made several errors that resulted in an unfair trial. We affirm because the trial may not have been perfect, but it was fair, and that is enough. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) ("This Court has long

held that a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials.") (cleaned up).

## II.

During voir dire, the Estate asked the district court to use a juror questionnaire that included several questions about implicit bias in favor of police officers. Implicit bias, according to the Estate, is unconscious bias that the potential juror may not be aware of. The Estate argues that its written questions were phrased to uncover that bias. For example, the questionnaire asked potential jurors whether they agreed or disagreed with this statement: "Truth usually takes a backseat when police shoot and kill a citizen if it threatens an officer's personal and professional standing."

The court did not use the Estate's written questionnaire. Instead, it orally asked the potential jurors who stated that they had "friends or relatives that work in law enforcement" whether there was "anything about that relationship that you're concerned might interfere with your ability to remain fair and impartial in this case?" The court also explicitly warned the venire that it did not want jurors on the panel who would believe or disbelieve a witness simply because the witness worked in law enforcement. After the court gave both parties the opportunity to propose "any additional questions" for the court to ask, the Estate did not propose any questions about implicit bias in favor of police officers.

The Estate contends that the court failed to properly question venire members about their potential implicit or unconscious

bias in favor of law enforcement. It argues that the oral questions the court asked were not designed to reveal that bias.

Trial courts have "wide discretion in determining which questions are asked during voir dire." *United States v. Nash*, 910 F.2d 749, 753 (11th Cir. 1990); *see also United States v. Hill*, 643 F.3d 807, 836 (11th Cir. 2011) ("The method of conducting the voir dire is left to the sound discretion of the trial court and will be upheld unless an abuse of discretion is found.") (quotation marks omitted). "Even if the district court failed to ask particular voir dire questions that may be warranted in the case, we will find no abuse of discretion if the voir dire questioning as a whole complied with the essential demands of fairness, that is, if it gave reasonable assurance to the parties that any prejudice of the potential jurors would be discovered." *Nash*, 910 F.2d at 753 (quotation marks omitted).

Even if we assume that the questions on the Estate's questionnaire were "warranted in [this] case," the "questioning as a whole" fell well within the district court's wide discretion and "gave reasonable assurance to the parties that any prejudice of the potential jurors would be discovered." *Id.* District courts are not required to ask the specific questions proposed by the parties or ask them in a certain format, *see id.*, and the court's questions were designed to uncover biases in favor of law enforcement. The court did not abuse its discretion by asking the questions that it did in the format that it did, instead of the ones the Estate wanted in the format that the Estate wanted.

## III.

The Estate contends that the district court made several er-roneous evidentiary rulings.  It argues that the court should have excluded evidence of Greer's intoxication, evidence that the depu-ties were not criminally prosecuted for killing Greer, and parts of the testimony of two expert witnesses.

## A.

Before trial, the court denied the Estate's motion to exclude evidence that Greer was intoxicated when the deputies shot him. At trial, the defense presented without objection Greer's autopsy report, which included his blood alcohol level (of 0.222%) and tox-icology.  Starting with opening statements and continuing through-out trial, the defense referred to Greer's blood alcohol level.  It also presented evidence that his blood alcohol level was well above the level (0.08%) that will result in a DUI charge under Florida law, evidence that there were prescription drugs in his system, and evi-dence that on a past occasion he had acted "extremely agitated" and had "required both physical restraints" and sedatives while in-toxicated.

At the Estate's request, the court gave a cautionary instruc-tion to the jury.  The court told the jurors that it was not a crime for Greer to have a high blood alcohol level and that the purpose of comparing his blood alcohol level to the minimum level for DUI was to "give [the jury] some real life context" for his level of

20-13542             Opinion of the Court                7

intoxication. The Estate now contends that allowing any evidence about Greer's intoxication was reversible error.

Generally, we review evidentiary rulings only for an abuse of discretion. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011). But when a party "fail[s] to preserve [its] claim of evidentiary error, we [] review only for plain error." *Id.* The Estate failed to object at trial to the autopsy report containing evidence of Greer's blood alcohol level and toxicology, but it argues that we should still review the issue for an abuse of discretion because the district court had definitively resolved the issue by denying the Estate's pre-trial motion to exclude that evidence. *See, e.g.*, Fed. R. Evid. 103(b); *United States v. Harris*, 886 F.3d 1120, 1127 n.2 (11th Cir. 2018). We don't need to decide whether the Estate's objection to the evidence of Greer's intoxication was forfeited because, even if it wasn't, the district court did not abuse its discretion or plainly err by admitting any of the evidence on that subject.

The Estate argues that the evidence of intoxication was not relevant. But it was because the deputies tried to communicate with Greer repeatedly, and his intoxication made it less likely that he could understand and respond to their instructions. The intoxication evidence also undermined testimony that Greer was a non-violent person because his intoxication made it more likely that he acted out of character, particularly given the evidence that on another occasion when he was intoxicated he had been extremely agitated and had required physical restraints and sedatives.

The Estate argues that the evidence was unfairly prejudicial. But it was not. In closing, counsel for one of the deputies told the jury that it was perfectly legal for Greer to be drinking in his own house. And the court gave a limiting instruction in which it reminded the jurors that the "only purpose" for considering Greer's blood alcohol level was "to give [them] some real life context in terms of how does that compare to a .08, in terms of what would be a DUI type of offense." The court stressed that the jury should not hold Greer's blood alcohol level against him "in any way."

Even if the intoxication evidence could be considered unfairly prejudicial, a "limiting instruction can diminish [that] unfair prejudice." *Brown*, 665 F.3d at 1247. And we presume that the jury followed its instructions. *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions."). The Estate has failed to show that the court abused its discretion in its handling of the intoxication evidence.

B.

The Estate called as one of its witnesses Ryan Bliss, the Florida Department of Law Enforcement officer who investigated Greer's shooting. On direct examination, Bliss testified that in investigations of officer-involved shootings like Greer's, an investigative report is written and submitted "to the state attorney's office." The court ruled that testimony opened the door to questions by the defense about what the state attorney did with the report that was submitted in the Greer investigation. Concerned that the jury

would wonder whether the state attorney had pressed criminal charges (which could unfairly prejudice the deputies), the court allowed the defense to ask a narrow question on cross-examination: whether it was true that the state attorney had declined to prosecute the deputies. Bliss answered that was true. The court immediately gave a limiting instruction. It explained to the jury that because the standard of proof in a criminal case is different from the standard in a civil case the non-prosecution "decision should have no impact on [the jury's] decision in this case."

The Estate challenges the admission of that testimony. Evidence of criminal non-prosecution is generally inadmissible in a related civil case because the difference in the standards of proof might mislead the jury. See FIGA v. R.V.M.P. Corp., 874 F.2d 1528, 1531 (11th Cir. 1989). But otherwise inadmissible evidence can be properly admitted when opposing counsel "open[s] the door" to that evidence. United States v. West, 898 F.2d 1493, 1500 (11th Cir. 1990); see also Bearint ex rel. Bearint v. Dorel Juv. Grp., Inc., 389 F.3d 1339, 1349 (11th Cir. 2004) ("This Circuit recognizes the concept of curative admissibility — also called opening the door or fighting fire with fire.") (quotation marks omitted). And a limiting instruction can offset any potential jury confusion that might arise from the evidence that a civil suit defendant was not criminally

prosecuted. *See United States v. Wyatt*, 611 F.2d 565, 569 (5th Cir. 1980).[1]

The district court did not abuse its discretion here. It was not a clear error of judgment to rule that the Estate elicited evidence from its own witness that opened the door to the defense's follow-up question. *See United States v. Cooper*, 926 F.3d 718, 730–31 (11th Cir. 2019) (holding that the district court did not abuse its discretion by admitting otherwise inadmissible testimony after the defense opened the door to that evidence).[2] In any event, the court's instruction "minimized the risk[]" that the testimony may have misled the jury. *Wyatt*, 611 F.2d at 569. And, once again, we presume the jury followed its instructions. *Stone*, 9 F.3d at 938.

## C.

The Estate challenges the testimony of two defense experts: the medical examiner who performed Greer's autopsy, Dr.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[2] The Estate also argues that it could not have opened the door because the defense did not object to Bliss' direct testimony. *See Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd on other grounds*, 480 U.S. 1 (1987) (listing, as one of several "good reasons why skilled trial counsel may make a tactical decision not to object to an improper argument," the possibility that "the improper argument may open the door"). We have never held that a party must object to evidence before curative admissibility is available, and we won't do so here.

Krzysztof Podjaski, and the testimony of a forensic firearms and tool examiner, Richard Ernest.  The Estate contends that the district court abused its discretion by allowing those two expert witnesses to testify that Greer's left arm was raised when the deputies shot him.

i.

The video of the deposition of medical examiner Podjaski was played for the jury at trial.  Before trial, the Estate had asked the court to exclude testimony from that deposition about the position of Greer's arm at the time of the shooting.  The argument behind the motion was that particular testimony went beyond the scope of the autopsy report and that it transformed Podjaski into a retained expert witness who had not submitted an expert's report as required by Fed. R. Civ. P. 26(a)(2)(B).  The court ruled that Podjaski would be allowed to testify concerning the position of Greer's arm because his opinion about it was based on his examination and the autopsy he had performed.  The court also reasoned that Podjaski was not a retained expert, but a non-retained one and they are not required to submit a report that satisfies Rule 26(a)(2)(B).[3]

---

[3] Rule 26(a)(2)(C) provides that "if the witness is not required to provide a written report, [the party's] disclosure [of expert testimony] must state" both "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts

12                    Opinion of the Court                    20-13542

During the video deposition, medical examiner Podjaski tes-tified that the wounds in Greer's arm suggested it was "more likely than not" that his arm was "raised in some manner" when the dep-uties shot him. He also testified that he first reached that opinion during his deposition while reviewing the autopsy report.

The Estate argues that the court's ruling about Podjaski's testimony was an abuse of discretion under Rule 26(a)(2)(B). But the disclosure requirements the rule imposes apply to witnesses "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). As the district court reasoned, Podjaski was neither a retained expert nor specially employed within the meaning of the rule. He prepared his autopsy report in the normal course of his medical examiner job duties, not specifi-cally for this litigation.

The Estate argues it is enough for the rule to apply that Podjaski formed his opinion during his deposition (after reviewing his autopsy file, which contained a photograph of the wounds). But that isn't enough. The rule applies only if the expert was "retained or specially employed." That Podjaski formed his opinion when he was testifying during this litigation, based on material produced or gathered before this litigation, does not make him retained or specially hired.

---

and opinions to which the witness is expected to testify." But the Estate does not rely on this provision on appeal.

The Estate also argues that the court should have barred the defense from using Podjaski's testimony at trial because he was unsure of his opinion, making it inadmissible under *Daubert*. But the Supreme Court has explained that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). In his deposition, Podjaski gave his opinion about arm position and admitted that he "c[ould] be wrong." It was not an abuse of discretion for the court to find that Podjaski's testimony satisfied *Daubert*. As the district court explained, any lack of certainty went to the weight the jury should give his testimony, not its admissibility. *See Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341, 1345 (11th Cir. 2003) (stating that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence" and concluding that the plaintiff's argument that an expert's testimony was "methodologically flawed" went "to the weight, not the admissibility, of the evidence he offered").

ii.

As for the forensic firearms and tool examiner, Ernest, the Estate argues that it was error to allow him to testify about Greer's arm position because he is not a forensic pathologist. We have never held that forensic firearms experts are categorically excluded from testifying about body position or wound path, or that forensic pathologists are the only experts who can give testimony about those things. The Estate offers no convincing argument or

authority for why we should create a categorical exclusion, and Ernest has considerable experience in this area. He has worked as a firearms examiner or forensic consultant since 1977. Over the decades, his job duties have included tasks such as determining "angles" and "shooting distances" at "shooting scenes" and "[a]ssisting [m]edical [e]xaminers in ballistics related areas," including "muzzle to target distances based on wound characteristics" and "intermediate target effects."

District courts enjoy "considerable leeway in making [] determinations" about the admissibility of expert testimony, and we will reverse those determinations only if they are "manifestly erroneous." *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quotation marks omitted). This one was not.

## IV.

During trial, the district court expressed concern that submitting both the Estate's federal and state law claims to the jury could result in an inconsistent verdict or lead to double recovery for the Estate. The court told the Estate to choose between its state and federal claims; the Estate protested but chose the federal claims. The court instructed the jury on the Estate's federal claims and not its state law claims. The jury verdict found that neither deputy "intentionally committed acts that violated [Greer's] federal constitutional right not to be subjected to excessive or unreasonable force during an arrest, which caused [his] injury." The court entered judgment in favor of the defendants on all claims.

20-13542                Opinion of the Court                15

The Estate contends that the court erred and a new trial is required, but we disagree. Even if it was error to enter judgment for the defendants on the state law claims without submitting those claims to the jury, it was harmless error because it did not affect the Estate's substantial rights. *See Vista Marketing, LLC v. Burkett*, 812 F.3d 954, 979 (11th Cir. 2016) (even when the district court errs "the challenging party must establish that the error affected substantial rights to obtain reversal and a new trial"). It did not affect the Estate's substantial rights because the jury's findings about reasonable force as to the federal claims would have definitively resolved the state law claims in favor of the defendants, just as it resolved the federal law claims.

Our decision in the first appeal in this case shows why.[4] We held that the Estate's federal excessive force claims and state law wrongful death claims all "turn[ed] on the reasonableness of the deputies' use of deadly force." *Greer I*, 767 Fed. App'x at 712. The Estate's wrongful death claims were based on the underlying torts of assault and battery. Under Florida law, "the sole basis and limit of an arresting officer's liability in making a lawful arrest is founded

---

[4] Our *Greer I* decision was unpublished and not precedential, *see* 11th Cir. R. 36-2, but it is the law of the case, *see United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case.").

on a claim of battery." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). It is only when "excessive force is used in an arrest" that "the ordinarily protected use of force by a police officer is transformed into a battery." *Id.*

Like a federal excessive force claim, a Florida "battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Sanders*, 672 So. 2d at 47; *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) ("Whether the force used is reasonable [for purposes of a Fourth Amendment excessive force claim] turns on the facts and circumstances of each particular case . . . .") (quotation marks omitted). Under Florida law, "officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is clearly excessive." *Davis*, 451 F.3d at 768 (quotation marks omitted); *see also Sanders*, 672 So. 2d at 47. For the Estate to succeed on either its wrongful death claims or its § 1983 excessive force claims, it needed to prove that the deputies used excessive force on Greer.

After all, in our opinion in the first appeal we recognized that both the federal claims and the state law claims "turn[] on whether, in the moment before the shooting, the deputies reasonably believed that [Greer] posed an immediate threat to their safety." *Greer I*, 767 Fed. App'x at 710. And that is why we said the "principal question in this case is whether . . . it was reasonable for [the deputies] to use deadly force on [Greer]." *Id.* The jury answered

that central question or questions (depending on how you count) in favor of the deputies, finding that neither of them caused Greer's death by "subject[ing] [him] to excessive or unreasonable force."

It would be impossible to reconcile that jury finding with a judgment in favor of the Estate on the state law claims. For that reason, any arguable error in leaving off the verdict form a place for the jury to reiterate that finding for the state law claims was harmless. Cf. *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004) (holding that "even if the district court should have let the question [of whether the officers acted with bad faith or malicious purpose] go to the jury, any error was plainly harmless" because the jury had already determined that the officers did not commit a battery, so "they could not have found that either officer had battered [the plaintiff] with bad faith or malice").

For what it's worth, in other cases we have considered federal and Florida excessive force claims together, using the same standard to determine whether an officer's use of force was excessive. See *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1275 (11th Cir. 2021) (considering the plaintiff's federal and Florida excessive force claims together); *Penley v. Eslinger*, 605 F.3d 843, 856 (11th Cir. 2010) (granting summary judgment to the defendant officer on federal and Florida excessive force claims because his use of deadly force was "objectively reasonable"); *Davis*, 451 F.3d at 768 (relying on the "facts and reasoning set forth" in the federal excessive force analysis to evaluate whether an officer's use of force was

"transformed into a battery" under Florida law) (quotation marks omitted).

All of this means that the jury verdict which resolved the Estate's § 1983 claims in favor of the defendants also defeated its state law claims because the deputies cannot be liable under state law, just as they can't be under federal law, for using reasonable, non-excessive force. *See Penley*, 605 F.3d at 856. If it was error to submit only the federal claims to the jury, it was harmless error.

## V.

Finally, the Estate contends that the court erred by instructing the jury using the Eleventh Circuit pattern jury instructions for claims of excessive force in violation of the Fourth Amendment during an arrest. *See Pattern Civ. Jury Instr. 11th Cir. 5.4* (2019). Those instructions included the following language: "When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the arrest." Greer was not formally arrested — or perhaps it is more accurate to say that his arrest was not completed — so the court instructed the jury that "[f]or the purposes of your deliberations, an attempt to effectuate an arrest can be considered an arrest."

The Estate argues that there was no factual basis for the court's instruction about attempted arrest because there was no evidence the deputies were attempting to arrest Greer when they shot him. During trial, the court found that "the record is replete with examples of testimony indicating that the purpose of [the

deputies] going in there was to take [Greer] into custody." We agree that it is beyond dispute that the deputies were attempting to arrest Greer when they shot him. *See United States v. Wright*, 862 F.3d 1265, 1282 (11th Cir. 2017) ("The term 'arrest' ordinarily means that someone has been seized and taken into custody, however briefly.").

The Estate also argues that the court should have specifically instructed the jury about the use of deadly force, not the use of force more generally. "When evaluating a trial court's failure to give a requested instruction, the omission is error only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 814 (11th Cir. 2017) (quotation marks omitted). The Estate asserts that we should require courts to give an instruction specific to deadly force in circumstances like the ones in this case. *Cf., e.g.*, *Rasanen v. Doe*, 723 F.3d 325, 334 (2d Cir. 2013) (holding that a "special instruction based on *Garner*" is necessary "in the original *Garner* context: the fatal shooting of an unarmed suspect") (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

But "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' *Garner* was simply an application of the Fourth Amendment's 'reasonableness' test." *Scott v. Harris*, 550 U.S. 372, 382 (2007); *see also Penley*, 605 F.3d at 849–50 (reaffirming that

Fourth Amendment excessive force claims involving deadly force are analyzed under an objective reasonableness standard).

We have affirmed the use of the pattern instructions in deadly police shooting cases before, *see, e.g.*, *Knight*, 856 F.3d at 815, and we do so again here. "The principal question in this case is whether . . . it was reasonable for [the deputies] to use deadly force on [Greer]." *Greer I*, 767 Fed. App'x at 710. Because the jury instructions posed that question and accurately stated the law, they fell within the district court's "wide discretion as to the style and wording employed in the instructions." *Palmer v. Bd. of Regents of the Univ. Sys. Of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000).[5]

**AFFIRMED.**

---

[5] The Estate also, somewhat inexplicably, argues that the district court should have instructed the jury that the proper standard is "whether the suspect poses an immediate threat to the safety of *the officers or others*," instead of the instruction that was given: "whether a suspect poses an immediate violent threat to *others*." Because "others," used alone, encompasses everyone else, including the officers, that argument fails.

JORDAN, Circuit Judge, Concurring:

I join Parts I, II, and III of the court's opinion. As to Parts IV and V, I concur in the judgment.

As to Part IV, I conclude that the district court erred in forcing the Estate to choose between its state and federal claims at trial. So long as it is not "conceded or established" that a requested remedy is unavailable, a "district court err[s] in requiring the plaintiff to elect" which remedy he or she pursues. *See Pulliam v. Gulf Lumber Co.*, 312 F.2d 505, 507 (5th Cir. 1963). This is not surprising, for the Federal Rules of Civil Procedure allow plaintiffs to plead alternative—even inconsistent—theories of recovery. *See, e.g.*, *Banco Cont'l v. Curtiss Nat. Bank of Miami Springs*, 406 F.2d 510, 513 (5th Cir. 1969) (Rule 8 "makes it clear that the requirement of honesty in pleading does not force a party to select a single theory to the exclusion of all others if he is not sure of the basis for recovery or defense") (internal quotation mark and citation omitted). Absent other legal problems, the plaintiff is entitled to submit those alternative claims to a jury. *See, e.g.*, Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."); *Breeding v. Massey*, 378 F.2d 171, 178 (8th Cir. 1967) ("The right of a plaintiff to try his case on alternate theories has uniformly been upheld in the federal courts and [a] plaintiff cannot be required to elect upon which theory to proceed."); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 990–91 (4th Cir. 1981) ("To the extent that each

theory had legal validity as applied to the operative facts, the plaintiff was entitled to have both theories submitted to the jury, and should not have been required to make the election it did.").

Nevertheless, I agree that the error was harmless. Florida law provides that "[a]n officer . . . may not be held personally liable in tort . . . for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). In the Estate's first appeal before us, we concluded that there was a genuine issue of fact as to whether the deputies exhibited "wanton and willful disregard of human rights, safety, and property," § 768.28(9)(a), and we recognized that evidence of an officers' excessive force could be probative of wanton and willful disregard. *See Greer v. Ivey*, 767 F. App'x 706, 712 (11th Cir. 2019). The jury here concluded that the Estate failed to show that the officers' use of force was unreasonable under the circumstances. As a result, the Estate could not show that the officers' conduct was wanton and willful to human life and safety—a higher standard than unreasonableness—under § 768.29(9)(a). The district court's error in failing to submit both the state and federal claims to the jury was therefore harmless.

With respect to Part V, I agree that the district court's decision to instruct the jury using our pattern excessive force instruction, rather than a more specific deadly force instruction, was not

an abuse of discretion. *See Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007) (holding, in light of *Scott v. Harris*, 550 U.S. 372 (2007), that the district court did not err in "refusing to give a separate deadly force instruction"). Nevertheless, using an instruction specifically tailored to deadly force is the better practice. *See generally United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (recognizing that the pattern jury instructions "are not infallible" and "do not represent binding law").

A claim of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 388 (1989). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Two of our sister circuits have concluded that failure to provide a deadly force instruction can amount to reversible error in some scenarios. *See Rahn v. Hawkins*, 464 F.3d 813, 818 (8th Cir. 2006) ("When a plaintiff presents evidence at trial tending to show that a defendant used deadly force, the district court must instruct the jury as to that more exacting standard.") (internal citation omitted); *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) ("In a case involving use of force highly likely to have deadly effects, an instruction regarding justifications for the use of deadly force is required."). The Second Circuit reasoned that the failure to give a

deadly force instruction "'deprive[s] the jury of adequate legal guidance to reach a rational decision' on a case's fundamental issue" and such an error may "fatally subvert[ a] trial's integrity." *Rasanen*, 723 F.3d at 334–35.  And the Eighth Circuit explained that "[j]ury instructions that discuss excessive force in only a general way do not adequately inform a jury about when a police officer may use deadly force," and instructing the jury on Garner's "more exacting standard" is necessary.  *See Rahn*, 464 F.3d at 818 (internal citations omitted).

I agree with the Second and Eighth Circuits that the *Garner* standard "is more detailed and demanding than the one that governs excessive-force claims not including deadly force" and "the more general . . . instruction" may not give the jury the clearest understanding possible "as to what is permissible under the law." *Rahn*, 464 F.3d at 818 (internal citations omitted).  Using a more tailored deadly force instruction to guide juries—especially in what are often difficult cases—makes good sense.